IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARIES SHAZOR, | ) | CASE NO. 1:11 CV 913 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| STATE OF OHIO, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me by referral[1] is the *pro se* petition of Aries Shazor for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Shazor is currently incarcerated at the Grafton Correctional Institution where he is serving a term of six-years imprisonment imposed by the Cuyahoga County Court of Common Pleas in 2008 after Shazor pled guilty to single counts of drug trafficking and possession of a firearm while under disability.[3]

In his petition, Shazor raises as his single ground for relief that his trial counsel was ineffective because she had a conflict of interest in her representation of Shazor's co-defendants.[4] The State maintains that the petition should be denied because the Ohio appeals

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge Sara Lioi in a non-document order entered July 1, 2011.

[2] ECF # 1.

[3] *Id.*; *see also*, ECF # 8, Attachment (state court record) at 290.

[4] ECF # 1 at 5.

court's denial of Shazor's ineffective assistance of counsel claim was not an unreasonable application of clearly established federal law.[5] Shazor filed a traverse.[6]

For the reasons that follow, I will recommend that Shazor's petition for habeas relief be denied.

## Facts

### A.      Underlying facts/plea/sentence

The facts related below are from the decision of the Ohio appeals court in this matter,[7] as well as from Shazor's brief in support of the petition.[8]

In March, 2008, a Cleveland police officer smelled marijuana coming from Shazor's car parked on East 76th Street in a residential neighborhood.[9] Mellissa Halloran was with Shazor in the front passenger seat of the vehicle, while Daniel Halloran, Mellissa's husband, was in the back seat holding the Halloran's infant child.[10] After police ordered the occupants

---

[5] ECF # 8.

[6] ECF # 9.

[7] ECF # 8, Attachment at 287-96.  Facts found by the state appeals court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[8] ECF # 1 at 7-26.

[9] *Id*. at. 7.

[10] *Id*.

-2-

out of the car, they searched the vehicle, discovering 55 individual packets of heroin.[11] Additionally, several packets of heroin were found in Mellissa Halloran's purse, along with drug paraphernalia.[12] Shazor was arrested at the scene, while the Hallorans were questioned and released.[13]

Shazor was indicted on March 4, 2008, for drug trafficking, with specifications that the offense was committed within 100 feet of a juvenile and within 1000 feet of a school yard.[14] Additionally, he was indicted on one count of drug possession and one count of possession of criminal tools.[15]  In related but separate cases, the Hallorans were each indicted on charges of drug possession and child endangerment.[16] All three defendants retained Attorney Carolyn K. Ranke[17] and entered pleas of not guilty.[18]

---

[11] *Id*. at 7-8.

[12] *Id.* at 8.

[13] *Id.*

[14] ECF # 8, Attachment at 289.

[15] *Id.*

[16] ECF # 1 at 8.

[17] As the result of financial misconduct in two unrelated matters, on September 22, 2011, the Supreme Court of Ohio indefinitely suspended the law license of attorney Ranke. *See*, *Disciplinary Counsel v. Ranke*, 130 Ohio St. 3d 139, 956 N.E.2d 288 (2011).

[18] ECF # 1 at 9; ECF # 8, Attachment at 289.

Several months later, in October, 2008, the Cuyahoga Metropolitan Housing Authority police executed a search warrant at Shazor's apartment on Shaker Boulevard in Cleveland.[19] During that search, CMHA police found a .22 caliber revolver and so arrested Shazor for possession of a firearm while under disability.[20]

Just two days after that arrest, Shazor appeared in court for a previously-scheduled trial date in the drug possession case.[21] Instead of going to trial, however, Shazor reached a plea agreement with the State whereby, in his view, he would plead guilty to drug trafficking and to possessing a firearm while under disability in return for receiving a single three-year sentence.[22] The trial judge accepted the plea but sentenced Shazor to prison terms of three years on each offense, ordering that the terms be served consecutively.[23]

Shazor, *pro se*, attempted to file an untimely appeal.[24]

---

[19] *Id.*

[20] *Id.*

[21] *Id.* at 9-10.

[22] *Id.* at 10 (citing ECF # 1, Attachment (declaration of Aries Shazor)).

[23] ECF # 1 at 10; ECF # 8, Attachment at 290.

[24] ECF # 1, Attachment at 10-11; ECF # 8, Attachment at 432-43. The untimely appeal was received on November 26, 2008, by the appellate court but not filed due to non-compliance with Ohio App. R. 5(A).

**B.** **Post-conviction petition**

On April 13, 2009, Shazor, *pro se*, filed a petition for post-conviction relief under Ohio Revised Code § 2953.21.[25] In the petition, Shazor raised the following claims for relief:

1.  Petitioner's guilty plea was not knowing, intelligent or voluntary, where plea was fraudulently induced by counsel's misrepresentations, especially as to a plea bargain.[26]

2.  Counsel represented petitioner under a conflict of interest that adversely affected counsel's performance.[27]

After the State moved for summary judgment,[28] which motion Shazor moved to strike,[29] the court adopted the State's proposed findings of fact[30] and denied Shazor's petition.[31] In so doing, the court found first that Shazor's claim that counsel misrepresented the plea agreement was directly contradicted by the record of the hearing in open court:

---

[25] ECF # 8, Attachment at 18-54.

[26] *Id*. at 19.

[27] *Id*.

[28] *Id*. at 55-62.

[29] *Id.* at 72-75.

[30] *Id*. at 63-71.

[31] *Id.* at 76-77.

[The prosecutor]: "No agreement on sentencing, your honor."

The Court: "No agreement on sentencing?"

Ms. Ranke: "We do not have an agreement on sentencing, judge."[32]

As to the allegation of conflict of interest, the court found that even if Mellissa Halloran's affidavit, submitted with the post-conviction motion, was true that attorney Ranke had recommended to her that she cooperate with police in their case against Shazor in order to receive more favorable treatment, Shazor had shown no prejudice from that fact.[33] Specifically, the court concluded that: (1) Ranke had ceased her representation of the Hallorans before Shazor was presented with the plea agreement, and (2) Shazor had not alleged that he pleaded guilty because he thought Halloran would testify against him.[34] Indeed, the court observed, Shazor admitted that he did not know of Ranke's dealings with the Hallorans at the time he entered his plea.[35]

Therefore, on June 15, 2009, the court determined that Shazor had not shown that attorney Ranke was ineffective under either prong of the *Strickland v. Washington*[36] test and denied Shazor's post-conviction motion.[37]

---

[32] *Id*. at 69 (quoting plea hearing at 8-9).

[33] *Id.* at 70.

[34] *Id.*

[35] *Id.* at 70-71.

[36] *Strickland v. Washington*, 466 U.S. 688 (1984).

[37] ECF # 8, Attachment at 71.

## C.      Appeal to the Ohio court of appeals

Shazor, *pro se*, then timely filed[38] an appeal from the denial of his post-conviction

motion.[39] In his amended merit brief, Shazor raised the following assignments of error:

> 1.    The Lower Court made factual and legal errors in determining Appellant's
>       claim of attorney conflict of interest and thereby perpetuated [sic] the violation
>       of Appellant's Sixth Amendment rights under the Federal Constitution.[40]
>
> 2.    The Lower Court erred in denying Appellant's claim that but for counsel's
>       false averments about a three year sentence and otherwise deficient
>       representation, Appellant would not have pled guilty in Case No. 08-CR-
>       516577, and, instead, would have insisted on going to trial.[41]

The State filed a brief in opposition,[42] to which Shazor filed a reply.[43] On June 21,

2010, the Ohio appellate court then overruled both assignments of error, affirming the

judgment of the trial court as to the post-conviction motion.[44]

---

[38] Ohio App. R. 4(A) provides that, to be timely, an appeal must be filed within
30 days of the filing of the judgment being appealed. Here, as noted, the trial court denied
Shazor's post-conviction motion on June 15, 2009, and Shazor's notice of appeal was filed
on July 13, 2009. ECF # 8, Attachment at 78.

[39] In addition to the appeal, Shazor also filed motions for relief from judgment, and
to remand the matter for reconsideration, all of which were denied. The State sets forth the
procedural history of these motions at ECF # at 3 n.5.  However, because these matters do
not bear on the claim raised in the habeas petition, that history will not be detailed here.

[40] ECF # 8, Attachment at 221.

[41] *Id.*

[42] *Id*. at 267-74.

[43] *Id*. at 275-86.

[44] *Id*. at 287-96.

**D.      Appeal to the Supreme Court of Ohio**

Shazor, *pro se*, thereupon timely filed[45] a notice of appeal with the Supreme Court of Ohio.[46] In his memorandum in support of jurisdiction,[47] Shazor set forth two propositions of law:

1.      Whether the Sixth Amendment precludes an attorney's continued representation of a criminal defendant after [the] attorney breaches her duty to avoid a conflict of interest and fails to advise defendant of said conflict.[48]

2.      Whether a subsequent plea of guilty can nevertheless be deemed involuntary where the Defendant did not learn of the conflict of interest until after he had pled guilty and had been sentenced.[49]

The State did not file a responsive brief, and, on October 27, 2010, the Supreme Court of Ohio denied leave to appeal, dismissing Shazor's appeal as not involving any substantial constitutional question.[50] The record does not indicate that Shazor sought a writ of certiorari from the United States Supreme Court.

---

[45] Ohio Supreme Court Rule of Practice 2.2(A)(1)(a) provides that an appeal must be filed within 45 days of the judgment being appealed. Here, the appellate judgment was entered on June 21, 2010, and the notice of appeal filed in the Supreme Court of Ohio on July 29, 2010.

[46] ECF # 8, Attachment at 297.

[47] *Id*. at 299-316.

[48] *Id*. at 306.

[49] *Id.* at 310.

[50] *Id*. at 351.

**E.      Federal habeas petition**

On May 1, 2011,[51] Shazor, *pro se*, timely filed[52] the present petition for federal habeas

relief. In the petition, Shazor presents a single claim for relief:

> **GROUND ONE**: Attorney conflict of interest resulting in ineffective
> assistance of counsel.

> **Supporting Facts**: I retained attorney Carolyn K. Ranke as defense counsel.
> Subsequently, my two co-defendants hired Attorney Ranke. During counsel's
> simultaneous representation, counsel advised my co-defendant's [sic] to
> cooperate with the prosecution against me. Subsequently, counsel failed to
> pursue [a] viable defense to [the] firearm charge and failed to provide a
> reasonable investigation of the facts and law applicable to the firearm case;
> consequently, counsel advised me to plead guilty to the firearm case even
> though the firearm had been seized illegally. I found out about conflicting
> advice given to co-defendants only after I had pled guilty and was sentenced;
> still, counsel's disloyalty denied me a viable defense to [the] firearm
> [charge].[53]

As noted, the State has filed a return of the writ arguing that the decision of the Ohio

appeals court in denying this claim was not an unreasonable application of the clearly

established federal law of *Strickland*.[54] Shazor filed a traverse.[55]

---

[51] The petition was docketed at the Court on May 9, 2011 (ECF # 1), but was signed by Shazor on May 1. ECF # 1 at 6.  As the State notes, under the prison mailbox rule of *Houston v. Lack*, 487 U.S. 266, 270 (1988), a filing from an incarcerated *pro se* litigant is deemed filed at the time it is handed over to prison officials for mailing.

[52] 28 U.S.C. § 2254(d)(1) states that a petition must be filed within one year of the conclusion of direct review of petitioner's claims by the state.

[53] ECF # 1 at 4.

[54] ECF # 8.

[55] ECF # 9.

## Analysis

**A.    Preliminary observations**

Prior to consideration of the claim itself, I make the following preliminary observations:

1.    There is no dispute that Shazor is currently in custody of the State of Ohio under terms of a sentence imposed by an Ohio court after the acceptance of his guilty plea.  Moreover, there is no dispute that Shazor was so incarcerated at the time he filed this petition for federal habeas relief.  Thus, I recommend finding that Shazor meets the "in custody" requirement imposed by the statute vesting this Court with jurisdiction over the petition.[56]

2.    As noted, there is also no dispute that this petition was timely filed within one year of the conclusion of direct review of Shazor's claim for relief by the State.[57]

3.    Moreover, it appears that Shazor has totally exhausted the ground for relief asserted here by fairly presenting it through one full round of Ohio's established review procedure.[58]

4.    Finally, I note that Shazor has not requested the appointment of counsel[59] nor sought an evidentiary hearing.[60]

---

[56] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[57] 28 U.S.C. § 2254(d)(1).

[58] 28 U.S.C. § 2254(b),(c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[59] *See*, 28 U.S.C. § 2254(e)(2).

[60] *See*, 28 U.S.C. § 2254(h).

**B**      **Standards of review**

**1.**      ***Ineffective assistance of counsel***

In *Higgins v. Renico*,[61] the Sixth Circuit re-stated the foundational rubric for reviewing

claims of ineffective assistance of counsel pursuant to the long-standing teaching of

*Strickland v. Washington*:[62]

> Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[63]

The *Higgins* court then proceeded to discuss the applicable standards for evaluating

each prong of the *Strickland* test. It explained seriously deficient performance in the

following terms:

> When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms." A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

> "Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a thorough investigation of the law and facts relevant to possible options." Such choices can vary

---

[61] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

[62] *Strickland*, 466 U.S. 668 (1984).

[63] *Higgins*, 470 F.3d at 631.

greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference. Indeed, such strategic choices are virtually unchallengeable. As explained by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[64]

The clearly established federal law of establishing prejudice from deficient performance of counsel was stated by the *Higgins* court as follows:

> Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice. In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the

---

[64] *Id.* at 631-32 (internal citations omitted).

defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt." "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury." A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[65]

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[66]

**2.     *Guilty plea***

A guilty plea is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.[67] As such, a plea is a waiver of the right to trial before a judge or jury and, therefore, must be

---

[65] *Id.* at 633-34 (internal citations and parenthetical comments omitted).

[66] *Id.* at 631 n.3.

[67] *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

made voluntarily and intelligently,[68] as determined under the totality of the circumstances.[69] The Constitution requires that the totality of the circumstances reflect that the defendant is informed of the direct consequences of the plea.[70] Moreover, a valid plea must be a voluntary and intelligent choice among the alternative courses of action open to the defendant.[71]

In a habeas proceeding, the State bears the burden of showing the petitioner's plea was valid and usually does so by producing a transcript of the plea hearing.[72] Although no exact recital of waived rights is required, the record should reflect a full understanding of the direct consequences of the plea, so that it is clear that the plea represents a voluntary and intelligent choice among the alternatives.[73] The court will not presume a valid waiver from a silent record.[74]

Because a valid plea is a solemn declaration of guilt by the defendant, it carries a presumption of truthfulness.[75] In addition, having entered a valid plea, the defendant may not

---

[68] *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

[69] *Brady v. United States*, 397 U.S. 742, 749 (1970).

[70] *Id*. at 755.

[71] *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

[72] *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

[73] *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

[74] *Boykin*, 395 U.S. at 243.

[75] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

then challenge antecedent non-jurisdictional defects in the proceedings.[76] As the Supreme Court teaches, this is because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process."[77] Thus, as the Sixth Circuit has recently reaffirmed, "after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself."[78]

### 3.     *Fairly presented claims not adjudicated*

The standard of review outlined by 28 U.S.C. § 2254(d) applies by its own terms only to habeas claims that were "adjudicated on the merits in State court proceedings.[79] When a federal habeas claim was fairly presented to but not adjudicated on the merits by the state courts, the federal habeas court must evaluate that claim under the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact.[80]

---

[76] *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973).

[77] *Id*. at 267.

[78] *Werth v. Bell*, 692 F.3d 486, 495 (2012).

[79] 28 U.S.C. § 2254 (d); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[80] *Maples*, 340 F.3d at 436; *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 803 (N.D. Ohio 2007). In circumstances not applicable here, federal courts employ a modified version of AEDPA deference to the state court decision in cases where the state court did not squarely address the petitioner's claim as a federal Constitutional claim, but its analysis nevertheless bears "some similarity" to the requisite analysis set forth in clearly established federal law. *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006).

**C.      Application of standards**

Although Shazor's claim as stated here arises out of ineffective assistance of counsel,

the precise allegation of how counsel was ineffective actually consists of several arguments,

some of which have not always been precisely stated and analyzed through the proceedings.

The exact arguments are as follows:

1.      An improper conflict of interest existed because defense counsel Ranke
        undertook to represent both Shazor and the Hallorans.

2.      This dual representation was a conflict of interest because attorney
        Ranke advised the Hallorans to cooperate with the prosecution in its
        case against Shazor.

3.      This conflict caused attorney Ranke to neglect preparation of a defense
        to Shazor's felon in possession charge; specifically, that the gun
        forming the basis for that charge was discovered in an illegal search. In
        turn, this neglect caused Shazor to enter an plea of guilty without
        knowing of a viable defense to the felon in possession charge.

4.      That viable defense is that the search warrant was executed by CMHA
        police on property not under CMHA jurisdiction.

As a review of the record discloses, the state appeals court clearly dealt with the first

assertion (the existence of a conflict of interest) and, based on its finding that there was no

conflict, the state court concluded that there was no basis for finding that an illusory conflict

produced an unknowing plea. But the Ohio court did not address the claim asserted in

Shazor's brief regarding failure to prepare a defense to the gun charge or the claim that the

plea was unknowing because Shazor entered it without knowledge of an allegedly meritorious defense.[81]

In such a situation, the federal habeas court would usually apply the AEDPA standard of review for that portion of the state court decision which did address a fairly presented federal claim and consider *de novo* that portion of the claim not addressed by the state court.

As I will discuss below, the issues of (1) whether a conflict of interest existed, (2) whether such a conflict was cured by Ranke's withdrawal of representation, and (3) whether Shazor was informed of a valid defense to the gun charge are only relevant in this habeas matter, as discussed above, insofar as they bear on the issue of whether Shazor's plea was valid as being knowing, voluntary, and intelligent.[82] Because the issue of the validity of the plea here turns on whether Shazor entered it without knowledge of the fact that a meritorious motion to suppress would have been a defense to the gun charge, and since that issue was not addressed in state court, I recommend that it now be considered *de novo.*

Shazor argues that his defense to the felon in possession charge, had Ranke pursued it and properly informed him, would have been a successful motion to suppress on the grounds that the search that discovered the gun was improperly conducted by CMHA police on property not under CMHA jurisdiction.[83] Ohio courts are uniform, however, in rejecting

---

[81] *See*, ECF # 8, Attachment at 240.

[82] *See*, *Tollett*, 411 U.S. at 266-67.

[83] ECF # 1 at 18-20.

-17-

this argument. In *State v. Fannin*,[84] the Ohio appeals court applied the federal exclusionary rule to a similar claim by that defendant that CMHA police had arrested him while he was not on CMHA property:

> Even if we were to accept the defendant's argument that his arrest occurred in the city of Cleveland, not on CMHA property, it would not form the basis for any relief. The exclusionary rule is only used to remedy violations of constitutional law and not violations of state statutes. See *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 234-35, 416 N.E.2d 598. The courts have held that a violation of R.C. 2935.03(D) does not rise to the level of a constitutional violation, thus precluding the suppression of evidence for that reason. See *State v. Riggenbach* (1994), 97 Ohio App.3d 661, 663, 647 N.E.2d 246; *State v. Coppock* (1995), 103 Ohio App.3d 405, 412, 659 N.E.2d 837; *State v. Bostwick*, 2000 Ohio App. LEXIS 657 (Feb. 24, 2000) Cuyahoga App. No. 75124, unreported. Even had the facts precluded application of R.C. 2935.03, the court could not have granted a motion to suppress on that ground.[85]

The reasoning of the Ohio court in *Fannin* directly applies to Shazor. And under that reasoning, even if the CMHA officer executed the search warrant at Shazor's home outside his authorized jurisdiction, that fact would not have resulted in an Ohio court granting a motion to suppress the fruit of that search.

A trial attorney has no duty to raise or pursue a non-meritorious motion to suppress, and the failure to do so cannot be the basis for finding that the attorney was ineffective.[86] Based on the above authority, because a motion to suppress would not have been viable,

---

[84] *State v. Fannin*, 2002 WL 31618484 (Nov. 21, 2002 Ohio Ct. App.).

[85] *Id.*, at *2 (quoting *State v. Paul*, Cuyahoga County App. No. 79596, 2002-Ohio-591).

[86] *See*, *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006). "When the claim of ineffective assistance is based on counsel's failure to pursue a motion to suppress, we have required a defendant to prove that the motion was meritorious."

Shazor cannot establish that attorney Ranke was ineffective by depriving him of the knowledge of a meritorious defense prior to entering his plea. Thus, with no basis for showing that Ranke's performance was deficient, Shazor cannot establish ineffective assistance of trial counsel or that his plea was unknowing for lack of knowledge of a meritorious defense.

## Conclusion

Accordingly, I recommend that Shazor's petition for habeas relief be denied on the merits after *de novo* review.


Dated:  November 5, 2012                       s/ William H. Baughman, Jr.
                                               United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[87]

---

[87] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).